We'll hear United States versus Mitchell next. Okay, Counselor, you may proceed. Good morning. May it please the Court, I'd like to reserve five minutes for rebuttal. Your Honor, Manning, on behalf of the Appellant Ricardo Mitchell, the doctrine of implied bias is clearly established. Federal law is determined by the United States Supreme Court. That's the Fifth Circuit case, Brooks v. Drickey. And the doctrine of implied bias can be presumed regardless of actual partiality. And this...  Yes, yes, yes. Okay. Well, that's for a limited set of people that Justice O'Connor detailed. Precisely. That's not... the distant cousin is not one of the things that she detailed in her opinion. In this case, Judge, we had a close cousin on the record. Okay, but it's not the same as what Justice O'Connor detailed. We believe it was, Your Honor. In Justice O'Connor's concurring opinion, she lists these extreme circumstances or situations. One of them is an actual employee of the prosecuting agency, which was juror number 97 in this case. She also lists relatives of participants in the trial. In this case, the close... She says close relative, right, Mr. Manning? She says close relative, and here you have juror 28 saying, I'm a close cousin. But what does close... what does close cousin mean? Does that mean second cousin, third cousin? On average, you're correct. Yeah. Say it again. Well, how do we know what close cousin means here? I understand. You know, in that case, we would then go to some other circuit court's interpretations of... What about factually, though? Is there anything in the record as to exactly, you know, the nature of what close... Close is a little bit vague. They live together. Are they close cousins, second cousins? There's nothing in the record. Well, actually, within the record, when Judge Gomez inquired, he asked, you know, are you a distant cousin? No, she said she was a close cousin. Close cousin meaning closer than what a distant cousin would be. Sure, but that's the... We're discussing the very problem that we're trying to get a response to, which is factually there's no record to tell us what close cousin in that juror 28's mind means, is there? In the record, no, there's not. And as a... if we were... let's assume we agreed with you that a close relative, if she were a close relative, she would be impliedly biased, whether she thought she could be fair or not, and so she should have been dismissed, and that that... But in order to know that, would we have to remand the case for fact-finding? I believe no, Your Honor, and the reason I say that is because any kind of kinship, kinship which would be in a situation where she believes she's close, any kind of kinship would be a position that you would have to... that could be presumed as being biased. Fourth cousin twice removed would be a subject for implied bias? Probably not, but in this case... You just said any kind of kinship. I mean, that's what we've got to deal with. We're talking about degrees of consanguinity here, and she doesn't give us that. She doesn't say, it's my first cousin, and we're very, very close friends, see each other all... There's nothing like that. It's, are you distant cousins? No, we're close. What does that mean? Right. I would then relate the court to United States v. Burr, which is a 1807 case where Chief Justice John Marshall talks about kinship in that case. I didn't actually bring the case to the court, but when you had... Well, and I understand we have the issue of how close it was, and we may have to have a factual record on that. So that's the point. Would you concede then that if there's a factual question on that, that's something that the district court maybe should look into? Possibly, yes, ma'am. Well, if there was going to be a problem here, if you thought there was going to be some bias there, why didn't you ask additional questions of the audience and the juror? I believe in that case, trial counsel made an error to not... No, but it's not, no. Trial counsel made a decision. We can't say he made an error or he did the right thing. He made the decision based on what was confronting him, that he was satisfied to have that juror sit. He might have wanted that juror. I don't know. I can't say it's an error. You know, you've been there more than I have been.  All I know is trial counsel thought it was unnecessary to guardia a close cousin any further. Why should that be enough for the three of us? Well, the reason is, Judge, the error would be it would be unreasonable to see a biased juror. I mean, it would be unreasonable... Well, you're putting the rabbit in the hat here. Trial counsel said to himself, he knew he could have challenged her, and he knew he could have asked additional questions of her. She came out, she's some sort of cousin or whatever. But he made the decision to let her sit. And he made that decision without asking the judge to guardia her further. Right. Then what right do we have as an appellate court to second-guess what the lawyer who was in the trenches made when the decision was made? In that circumstance, if there's a reasonable cause to believe that this juror may be biased, it would be unreasonable in that situation for him to not request additional guardia to determine whether or not she's biased or not, because it would be unreasonable to have a juror on the jury that's biased. What's our standard of review on this particular number, juror number 97? 28. 28. It would actually be a plain error. However... That's even a tougher shot. Unless we can come in through the structural defect aspect of it, being that having a biased juror on the jury affects his constitutional right to due process. See, also, to add on to what Judge Cowen was just saying, there may be good capital reasons to do it. You know, you get a not guilty, you get an acquittal, everybody walks away. You get a conviction, you go, well, there's problems here. So that's tough for defense counsel not to challenge the court of close. Right. Right. In other words, and let me just add on that, if we were to hold this, wouldn't we be giving defense counsel sort of a perverse incentive to not challenge people for cause or seek further voir dire because it would give them another opportunity to say, oh, oh, my constitutional rights are violated on a plain error standard, even though I didn't say boo about it at the time when I could have dealt with it. Right. Well, we've got a situation in this case, Judge, where Juror 97, I mean, Juror 28 was not the question as to the closeness of the consanguinity, the blood relationship was not challenged. However, he did at some point make an effort to challenge Juror 97, which would show that at some point he was in a position to. . . Let's deal with one juror at a time. Right. 28 he never challenged. Right. Okay. Now, wouldn't we be in a position to, as Judge Jordan alluded to, giving this lawyer a second bite at the apple? He's playing games here. He'll put someone on the juror who hopes it's going to be not guilty, and if it's a guilty case, he can challenge her later on in the appellate courts. Well, I don't think you'll ever get a situation where the juror is as extreme as this situation here, where you've got potentially a close cousin of the prosecutor, you know, the jury. In that circumstance, I think that, as we agree, the more prudent thing to do is conduct additional voir dire. Well, a lot of people in the Virgin Islands are related to one another. That's correct. And that is precisely the problem we have here, having a relative of a participant in the trial. Because we don't have a stenographer in there in the jury deliberation, we don't know specifically what influence or effect of having that individual being on the jury. Let's turn, if we can, for just a second, to Juror 97. I'd like you to answer the argument that is made by the government here, that this is really no different from the 1950 Supreme Court case where the court said, oh, the mere fact that somebody works for the government isn't enough to imply bias. And here you've got the police department, which is not the prosecutor, and that's extending implied bias too far. If it were an employee of the prosecutor's office, that would be one thing, but an employee of the police department is once removed, therefore no implied bias. What's your answer to that? My answer to that is the juror, number 97, had a working relationship with the two witnesses, two key witnesses in this case, which is different from the 1950s case where all you had is just employees who worked for the postal service. So there was no actual connection to participants within the trial. In this case, the two police officers had an actual working relationship with that juror. Well, she said she worked in something different. He was out in the field and she was a supplier or something like that. So they didn't really, as you say, work together except they worked for the same employer. Right. Well, what makes this – this is not an exceptional case, though, exceptional, from which bias should be implied. It's actually not a position that it is, and the reason is is because they had regular interaction in the discharge of their duties. Well, trial counsel didn't seem to want to develop how close they were. He didn't think there was no request for further voir dire. Well, actually, he filed a motion to excuse that juror at that point. I think that gave the trial court the opportunity to conduct additional voir dire. But there was no additional voir dire. There was some, but there wasn't – he could have asked for additional voir dire. Right. Well, at the very least, he had unused a challenge that he could have used if he thought she was going to be so detrimental to his case. Precisely. However, he objected to it on calls after the fact. Well, that was after the power was sworn in. Actually, I believe it was actually before they were sworn in. But he could have challenged her for cause because he had a record of challenges left. Yes, correct. And he never used it. Correct. And after voir dire was over, before they were impaneled, he actually, at that point, filed a motion to strike that juror. I think there were also four additional alternate jurors on the two different jurors. Well, because she was so biased. She was going to be so biased. Why didn't he strike her for the jury? Well, I think that was error on his part. And, you know, having a juror who's on the jury whose bias is actually an error is my position. Thank you, counsel. Thank you. Good morning, Your Honor. Good morning. I'm Ishmael Myers, Jr., and I represent the appellate of the United States of America. This matter. Your Honor, in this matter, the Sixth Amendment guarantees the rights of the defendant to be tried by an impartial jury. This is exactly what occurred in this particular matter. The Supreme Court has defined an impartial jury as a juror that is impartial and indifferent. In this particular matter, juror number 28, which indicated that she is a relative of the prosecutor, she stated that she is a blood relative. She said close cousin. That's correct. Close cousin. That's right. So why, given Justice O'Connor's statements in Phillips and our adoption of that in our case law, why shouldn't the district court have immediately understood, oh, you're a close cousin of the prosecutor? That's going to be a problem. Well, first of all, she stated the question was, what is your relationship? Are you close or are you distant? She stated, first of all, close, and then she qualified that. She says, but I don't think that has anything to do with it. So right. Right. But, I mean, isn't the proper thing to send this case back and have it backfired on exactly what was done by the close? No, Your Honor. In Smith, this case is fractionally different from the case that you have cited, which is the Smith case. In the Smith case, the defense didn't know anything about the potential conflict of the jury. The defense didn't find out about it until after the jury's verdict. How is that relevant? The question with implied bias, all the case law indicates that implied bias is a problem whether or not the person in the position of having bias imputed to them thinks they can be fair or not. It doesn't matter whether they think they can be fair. It's a statement by the law generally that if, let's make it closer, okay, what if juror 28 had said, yeah, he's my husband. Would you say, he's my husband, but that has nothing to do with it. In fact, we don't get along all that well. I think I can put that out of my head and be completely fair here. Would you say that her saying, hmm, I can be fair would erase the problem? To be quite honest, in that type of relationship, husband and wife, I think that would be considered implied bias. Right. So the question isn't whether the person as to whom implied bias is being asked thinks they can be fair. The question is whether they're so close that the public generally looking at that would say, that's just flat unfair. That can't be a fair trial. No matter whether they think they can be fair or not, it can't be fair. So her statement, yeah, I don't think that has anything to do with it. I can be fair. That's irrelevant if she's truly a close relative of the prosecutor. Correct? That is correct, Your Honor. Okay. So getting to Judge Chigaris' question, since it's hard to know what close cousin means without any more in the record than that, shouldn't the district court have to wrestle with that? Should this go back so that the district court can figure out what is close cousin mean? No, Your Honor. If you look at the voir dire, she was very transparent. She knew that there was a relationship between her and the prosecutor. The defendant had notice of this particular relationship. What's the relevance of that? What is the relevance of the notice? The relevance of the notice is that he has an opportunity to dismiss the juror for cause or for premeditated action. I accept that for purposes of discussion. Let's say for purposes of argument that he made a strategic decision or that he fouled up. It doesn't matter what. But he chooses not to do something, which in fact is the case here. If, in fact, there is a close enough relationship between the juror, 28, and the prosecutor that one could rightly say there's implied bias, what does it matter what the lawyer thought? Your Honor, in an implied bias, there would be a degree in which the court would indicate that this person is so close to the prosecutor that no matter what they said, they basically could not be trusted with the evidence. Are you suggesting that a first cousin could never be close enough to fit that mold? I am suggesting that a cousin would not be close enough to fit that mold. What I am suggesting is in this particular matter, on all matters, that a close relative in this matter would be someone such as a brother or sister, mother or father. I would even go as far as maybe not. A cousin in this particular matter. You say an aunt would be close enough, but a cousin wouldn't? That is correct, Your Honor. Okay. Can you help us understand what would be the legal distinction there? Because now you're making an assertion about degrees of consanguinity, which I'm not aware that there's any basis for statutorily or in common law. So if you can help us with that, that would be great. There's nothing in the basis of – there's nothing in the basis statutorily or in the case law as to what is a close relative. What the government is asserting, Your Honor, is that this person was transparent. She said that she is a close relative. However, she also indicated right off the bat that that doesn't mean anything to her. She indicated that, you know, that doesn't mean anything. What does that have anything to do with it? And the court, the judge was there. The attorneys were there. They were able to look at her demeanor. They were able to listen to her transparency and to make a judgment about this particular individual. I get the feeling we're talking past each other, though, Mr. Myers. Would you concede that if there really is a basis for saying there's implied bias, that what she thinks has nothing to do with the question? If there's implied bias, it doesn't matter if the person absolutely to the core of their being believes they can be fair. It's irrelevant because the question isn't can you in fact be fair. It's can people generally look at a circumstance where you're that closely related and believe that it's going to be fair. That is not you, the implied bias juror, but the public generally. Isn't that the implied bias question? That is the implied bias, Dr. Young. So, once again, don't you have to concede that if Juror 28 is a close enough relative that one could say there's implied bias, that her statement that I don't think my relationship has anything to do with it is completely meaningless? No, Your Honor. Then I'm lost. Well, does standard review have any – we have two different standard reviews for 97 and 28. For 28, it's clear error, correct? Yes, Your Honor, clear error, plain error. So that gives you a little breathing space. Yes, it does, Your Honor. So that we could even find that it was error, but based on the rough requirements of proving plain error, you'd still be home free. That is correct, Your Honor. But is the error here such as being very close to, if not consistent with Justice O'Connor's comparative opinion, that we should find that this error, even under clear error, is a structural defect in the proceedings and not merely an error, a clear error? Your Honor. I mean, as Judge Gordon pointed out, if this is something which goes to beyond exceptional case but goes to a structural error, then we don't even have to question as to whether there's any prejudice. That's true. And would having a cousin for the prosecution here be a clear – a structural error? No, Your Honor. It would not be a structural error. Why not? Well, first of all, if you look at the questioning and the answers, there's absolutely nothing that would give the court any indication that she would be biased, whether actual or implied. Yes, but structural error goes beyond whether the person thinks or doesn't think. It goes to the integrity of the judicial system itself, where maybe they could be – it assumes that they would be unbiased, but it says that we would not allow something like this to even exist because of the potential. That is correct, Your Honor. And why shouldn't we look at this, even if it be a plain error, standard of review, as being such that as a structural error, we don't even have to question whether or not they would be biased or not. It's just something that we should not be proud to have people try for crimes, when sitting on the juror are people who are related to the government. Well, Your Honor, there is case law in this particular matter. In the case cited by the defense, United States v. Torres, on page 47, the Second Circuit stated in dicta that, although not arising to per se imply a biased category, relatives of the prosecutor might, in a particular case, be excluded. Now, even the Third Circuit says that yes, there are – even the Second Circuit says yes, there are situations in which a close relative of a prosecutor would be implied biased. However, if you look at the statement, it said might indicates that there are certain instances where a relative of a prosecutor being on a jury would not be considered implied biased. Well, there's nothing in this record that would indicate that she would or would not be. The record just – it wasn't developed sufficiently for my mind. But I take it from your argument that you would acknowledge that there is error here. But your position is what? It's not clear. It's not clear. But there's error. Well, Your Honor, my first position is that there's not error, because there was enough questioning of the juror. But if there is error, it's definitely not – it definitely does not rise to the level of clear error. How much questioning? There's hardly any questioning there. It's just a couple of words back and forth. That is the whole thing. She wasn't grilled at all. Well, I believe that her answer, close, but that doesn't mean anything, basically cut off the judge's questioning because it gave some indication that she could be fair. And then when he went further to ask whether you could be fair and impartial, she said, yes, he could be. Your Honor, in terms of – Did you refer to Juror 97 since your client was kind of grilled? Yes, Your Honor. In terms of Juror 97, the case that I cited, Dennis v. U.S., which they tried to bar all the government workers, I believe this is a similar situation. This juror was a person who handled the property for the police department. She worked for the police department and knew the testifying officers from her employment in the same agency. That is correct, Your Honor. That's not close enough, huh? No, Your Honor. She is not an investigator. All she does is that she hands out – she's responsible for the property. She gives property to the officers. Would it have been close enough if she was riding in the squad car with them? Yes, that would be close enough. Would it be close enough if she weren't riding in the squad car, but she was a fellow officer in the field and sometimes saw him in the field? Yes. So would it be close enough if she never saw him in the field, but she was still a field agent? Yes, I believe a field agent in this particular matter would be close enough. So it is the fact that she doesn't go in the field, but she's still a police department employee. She issues them materiel, uniforms. I don't know. For all we know, the supplies she gives them include handing them the guns and ammo that they take out. That's not close enough because she doesn't leave the office? Well, not that the fact that that's not close enough that she doesn't leave the office. She doesn't have a very close working relationship with all of the officers. There were several officers that testified. She only mentioned two of the officers, one of the officers that was on the scene and another officer that was a forensic officer. The main officer who did the arrest, she didn't even mention. She said she didn't mention his name. She knows one of the officers at least who's directly involved in the arrest and is a testifying witness. That is correct, Your Honor. Officer Taylor. And she, in her job, has interaction. They're both employed by the same police department, and she says, I know him from work. So it's clear that there's a working relationship there. Why isn't the fact that there's a working relationship, even if it isn't a working relationship in the field, enough to say implied bias? Your Honor, that's not enough to say implied bias because they're not this. She didn't say that they would have a close working relationship. Her job was to issue him equipment and to make sure that equipment, that he kept the equipment and that he works with the equipment, Your Honor. This was not an investigator. This was not a police officer. This was not someone in the field who they see every day, who they see at crime scenes. This is just a person in the office who's handing out uniforms and bulletproof vests. That's not a close enough relationship, Your Honor. Thank you, Counsel. Thank you, Your Honor. With respect to juror number 97, what we know is that she's a co-worker. She's a co-worker that has interactions with at least one of the star witnesses in this case. Just out of curiosity, how many people are employed by the police departments here? I have no idea, Your Honor. Well, I mean, you know, there's a practical issue in a small community. Eventually, if we come up with broad rules that nobody can be a juror, that's going to be a problem. Precisely. No, I understand that. However, in this situation, just having a police officer who's another one, having a property clerk who does not have interactions with these officers is something completely different than having a property clerk who regularly interacts with a testifying witness. Because we don't know specifically what's going to happen in the jury deliberation room. She's in there. She's planning in that jury deliberation room. We don't know specifically what they're deliberating to. Is a co-worker in this position subsumed under the implied bias rule? I believe it is. Because, you know, a prosecuting agency, in my understanding or interpretation, would be the prosecutor's office as well as the police department. But there's no actual bias shown in regard to 97, right? The factual record did not substantiate actual bias in this case. So we're just kind of limited to implied bias. And I think the voir dire on both jurors went to whether or not there was actual bias rather than actually voir dire and determine whether or not implied bias could have been here. That's where the factual record stopped as far as voir dire. But with respect to 97. Well, are you conceding then, counsel, that, and it sounded like you did a moment ago, that it's possible to be employed by the Virgin Islands Police Department and still not be subject to an implied bias in a criminal case? I can concede that. So it's the fact that this particular property clerk had interactions with a witness in the course of job duties that you say makes it a case of implied bias? Yes. Which would distinguish this case from the 1950s case. I think it was the Dennis incision, whereas the defense was trying to spread all government witnesses. If any of those government witnesses had then the additional step of having interactions with a witness, and that would be a problem. A police witness, that would be a problem. And that's with respect to number 97. But going back to 28, I think in Justice O'Connor's concurring opinion, she uses close relative. She doesn't define what close relative is. Mr. Manning, can you help us out with the question of perverse incentives here that was raised before? I'm not sure we got an answer to it. If we were to agree with you that there's a problem here, how could we manage addressing that without somehow encouraging defense lawyers to sit on a problem like this and not mention it? With the hope, as Judge Shigeru said, that if they win, they win, great, but if they lose, they can pull out of their back pocket, wait a second, structural defect. Right. Well, I think within our circuit, the doctrine of implied bias has not been at the forefront of the determination of actual bias when you deal with jurors. And I think this is the situation where it went over the head of the trial court, I mean, trial judge, and also went over the head of the trial counsel. If that's true, are you conceding that there's no plain error here, that it wasn't plain, that it shouldn't have been plain? Well, actually, I'm not. I'm suggesting there was plain error because the law is clear enough when you go to the Supreme Court level and you look at what the other circuits are doing. But in this case, the fact that you've got a close cousin and also an employee of the police department has that interaction would raise red flags. That's enough to raise red flags to do something more than just try to do some actual bias. So with respect to Justice O'Connor's position, I think that she does not define what close relative would be. I think she just uses close relative. And in this case, we've got a juror who admits on the record that I'm a close relative. And I think that – So would the appropriate remedy here be remanding it for more fact-finding? I believe that the fact that she conceded that she was a close relative, not distant, in and of itself, would lead to the – It's an outright reversal, you're saying. That's my position, yes. All right. Thank you very much. Thank you, counsel. Thank you for the excellent arguments. We'll take the case under advisement. The clerk will bring the court. Please rise.